IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

**HERMANDAD INDEPENDIENTE DE**
**EMPLEADOS TELEFONICOS**,
    Plaintiff,

v.

**PUERTO RICO TELEPHONE**
**COMPANY**,
    Defendant.

Civil No. 18-1220 (BJM)

## OPINION AND ORDER

Hermandad Independiente de Empleados Telefónicos ("HIETEL" or "the Union") seeks to vacate an arbitration award in which the arbitrator justified a three-day work suspension of HIETEL member Tanya Ayala ("Ayala"). Dkt. 5. Ayala's employer, Puerto Rico Telephone Company ("PRTC"), suspended her in 2013 for failure to meet her sales objectives. The grievance process culminated in arbitration in July and August 2017. PRTC's motion for summary judgment is now before the court. Dkt. 12. HIETEL opposed. Dkt. 15. PRTC responded. Dkt. 17. The case is before me on consent of the parties. Dkt. 9.

For the following reasons, the motion for summary judgment is **GRANTED.**

## SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate when the movant shows "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A dispute is "genuine" only if it "is one that could be resolved in favor of either party." *Calero-Cerezo v. U.S. Dep't of Justice*, 355 F.3d 6, 19 (1st Cir. 2004). A fact is "material" only if it "might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The moving party bears the initial burden of "informing the district court of the basis for its motion, and identifying those portions" of the record materials "which it believes demonstrate the absence" of a genuine dispute of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).

The court does not act as trier of fact when reviewing the parties' submissions and so cannot "superimpose [its] own ideas of probability and likelihood (no matter how reasonable those ideas may be) upon" conflicting evidence. *Greenburg v. P.R. Mar. Shipping Auth.*, 835 F.2d 932, 936 (1st Cir. 1987). Rather, it must "view the entire record in the light most hospitable to the party opposing summary judgment, indulging all reasonable inferences in that party's favor." *Griggs-Ryan v. Smith*, 904 F.2d 112, 115 (1st Cir. 1990). The court may not grant summary judgment "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248. But the nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts," *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986), and may not rest upon "conclusory allegations, improbable inferences, and unsupported speculation." *Medina-Muñoz v. R.J. Reynolds Tobacco Co.*, 896 F.2d 5, 8 (1st Cir. 1990). "To defeat a properly supported motion for summary judgment, the nonmoving party must establish a trial-worthy issue by presenting 'enough competent evidence to enable a finding favorable to the nonmoving party.'" *LeBlanc v. Great Am. Ins. Co.*, 6 F.3d 836, 842 (1st Cir. 1993) (quoting *Goldman v. First Nat'l Bank of Boston*, 985 F.2d 1113, 1116 (1st Cir. 1993)).

## BACKGROUND

Except where otherwise noted, the following facts are drawn from the parties' Local Rule 56[1] submissions.[2]

PRTC offers phone services through sales of phone lines that may be postpaid (sold with service contract binding the client for a set amount of time) or prepaid (sold without a contract). SUF ¶¶ 13–15; OSF ¶¶ 13–15. Sales Consultants work in all of PRTC's stores and facilities, and they are responsible for selling PRTC's products and services to any person who enters a PRTC store or facility. SUF ¶¶ 10–12; OSF ¶¶ 10–12. Consultants are paid monthly on a fixed salary, but they may receive incentives and bonuses based on sales performance. SUF ¶¶ 48–51; OSF ¶¶ 48–51. Here, the union-member and grievant was Ayala, who worked for PRTC from May 27, 2011 through March 2, 2016. PSF ¶ 1; RSF ¶ 1. Ayala worked as a Wireless Equipment Sales Consultant in PRTC's store located in the Plaza Caparra Shopping Center. *Id.* Ayala was asked to learn sales skills on the job. PSF ¶¶ 3–4; RSF ¶¶ 3–4.

PRTC and HIETEL are parties to a collective bargaining agreement ("CBA") that prescribes a mandatory procedure to handle disputes that arise between union members and PRTC, including disciplinary actions. SUF ¶ 1; OSF ¶ 1. Article 8 of the CBA

---

[1] Local Rule 56 is designed to "relieve the district court of any responsibility to ferret through the record to discern whether any material fact is genuinely in dispute." *CMI Capital Market Inv. v. Gonzalez-Toro*, 520 F.3d 58, 62 (1st Cir. 2008). It requires a party moving for summary judgment to accompany its motion with a brief statement of facts, set forth in numbered paragraphs and supported by citations to the record, that the movant contends are both uncontested and material. D.P.R. Civ. R. 56(b), (e). The opposing party must admit, deny, or qualify those facts, also with record support, paragraph by paragraph. *Id.* at 56(c), (e). The opposing party may also present, in a separate section, additional facts, set forth in separate numbered paragraphs. *Id.* 56(c). When the moving party replies to the opposition to a motion for summary judgment, that reply must include a statement of material facts limited to those submitted by the opposing party. D.P.R. Civ. R. 56(d). While the "district court may forgive a party's violation of a local rule," litigants ignore the Local Rule "at their peril." *Mariani-Colón v. Dep't of Homeland Sec. ex rel. Chertoff*, 511 F.3d 216, 219 (1st Cir. 2007).

[2] Plaintiff's Statement of Uncontested Fact at Docket No. 13 ("SUF"); Defendant's Opposition to Plaintiff's Statement of Uncontested Material Facts at Docket No. 15 ("OSF"), which also includes Defendant's submission of uncontested facts at 25–33 ("PSF"); Plaintiff's Response to Defendant's Opposition to Plaintiff's Statement of Uncontested Material Facts at Docket. No. 17 ("RSF").

established an agreement between HIETEL members, including Ayala, and PRTC as follows:

> The Brotherhood and the company recognize that productivity must be increased to face competition in telecommunications services. [To that end], the Brotherhood agrees that the Union member employees [will commit themselves] to [yield] maximum productivity, attendance, efficiency, [and] effectiveness rendering their highest level of productivity [in] conformance with Article 3 (Rights of the Management) and the agencies regulating its operations [regarding] production, attendance, punctuality, efficiency and effectiveness, in an orderly and disciplined manner. All [in accordance] with Article 6, [Cooperation] and Brotherhood.

SUF ¶ 113; OSF ¶ 113. Article 6, referred to above, is an agreement between HIETEL and its members "to promote, at all times and as fully as possible, good service and efficient cooperation [or operations]. The Brotherhood and its members also agree with the Company to maximize production in each daily work day." SUF ¶ 112; OSF ¶ 112.[3]

Full-time Sales Consultants like Ayala have a monthly quota of 110 phone lines, and they are required to meet that quota. SUF ¶¶ 21–22; OSF ¶¶ 21–22. If the Sales Consultant is absent, PRTC will reduce the quota proportionally to reflect the number of days he or she was at work. SUF ¶ 24; OSF ¶ 24. Contract cancellations, made during a seven-day grace period, do not reduce the number of sales made by a Sales Consultant for the purposes of his or her sales numbers that month. SUF ¶¶ 25–26; OSF ¶¶ 25–26. Sales Consultants who fall short of their monthly quotas, however, can enter the disciplinary process which is laid out in the Sales Performance Monitoring Rules ("the Rules" or "the Monitoring Rules"). Yarilus Pérez prepared the Rules. She stated at her deposition that the Rules inform employees of the work expected of them, give them opportunities to correct deficiencies, and warn them of potential disciplinary actions. PSF ¶ 39; RSF ¶ 39. As part of this task, Pérez also sets the sales objectives for PRTC. *Id.*

---

[3] The parties quibble over the translation, with HIETEL alleging that "efficient cooperation" is more accurately translated to be "efficient operations." SUF ¶ 112; OSF ¶ 112. This is not a material dispute.

The Monitoring Rules dictate that an exhortation be given to a Sales Consultant who does not reach eighty percent of the monthly sales objective. SUF ¶ 39; OSF ¶ 39. The exhortation is not a disciplinary measure per se, but it is the first step in the disciplinary process. SUF ¶ 41; OSF ¶ 41. The next step is a written reprimand, which is a disciplinary measure given to a Sales Consultant who has received an exhortation and, for two consecutive months, failed to reach at least eighty percent of the monthly sales quota. SUF ¶¶ 42–43, 45; OSF ¶¶ 42–43, 45. If the Sales Consultant again fails to meet at least eighty percent of the monthly sales quota after receiving an exhortation and a written reprimand, he or she may be suspended for three days, according to the Monitoring Rules. SUF ¶ 45; OSF ¶ 45.

Joel Crespo Torres ("Crespo") is PRTC's Administrative Official of the Company's Sales Department. SUF ¶ 16; OSF ¶ 16. He administers all of PRTC's Human Resources and facilities. SUF ¶ 17; OSF ¶ 17. Crespo analyzes budgets, disciplinary actions and measures, employee sales performance reports, and commissions reports. *Id.* Crespo stated at his deposition that some Sales Consultants "always surpass one hundred percent" of their monthly quota, and Sales Consultants may make more money than managers. SUF ¶¶ 52, 64; OSF ¶¶ 52, 64. Besides monitoring sales performances, Crespo is charged with documenting every disciplinary action given to PRTC's employees and sending the documentation to the employee's respective work areas. SUF ¶ 18; OSF ¶ 18.

On April 24, 2012, Ayala received an exhortation. SUF ¶ 65; OSF ¶ 65. During the month of February 2012, Ayala reached only forty-seven percent of her sales objectives, which triggered the exhortation. SUF ¶ 66; OSF ¶ 66. The exhortation states: "It is imperative to reaffirm that within the Discipline Regulations, lack[4] # 20, neglect or lack of interest in the performance of their duties." Dkt. 13-9 at 1. The following July and August, Ayala again fell short of the monthly sales quota; she reached thirty-three percent of the

---

[4] Throughout the certified translations in this case, "lack" is occasionally used where "Fault" or "Rule" would be more accurate. This order refers to each "lack" as a "Rule" or "Fault."

Hermandad Independiente de Empleados Telefónicos v. Puerto Rico Tel. Co., Civil No. 18-1220 (BJM)    6

quota in July 2012 and thirty-two percent in August 2012. SUF ¶ 68; OSF ¶ 68. Ayala received a reprimand letter on October 15, 2012 for failing to meet her quotas during those months. SUF ¶ 67; OSF ¶ 67. The written reprimand cites Rules 20 and 26, though it quotes from Rules 20 and 25. Dkt. 13-10 at 1. The range of consequences for a first offense ranges "[f]rom a Written Reprimand to a 15 Day suspension." *Id.* The parties agree that Ayala did not complain to the Bureau of Conciliation and Arbitration about her exhortation or written reprimand, which would be the prescribed step for employees who wish to challenge disciplinary measures. SUF ¶ 69; OSF ¶ 69. The purpose of the warnings in disciplinary actions is to notify employees that they must meet at least eighty percent of the set monthly sales objectives. PSF ¶ 36; RSF ¶ ¶ 36.

Ayala received a suspension letter on February 18, 2013 for failing to meet her monthly sales objectives in September and October of 2012. SUF ¶¶ 70, 74; OSF ¶¶ 70, 74; PSF ¶ 6; RSF ¶ 6. Ayala filled twenty-five percent of her September quota and thirty-five percent of her October quota. SUF ¶ 76; OSF ¶ 76. The suspension letter informed Ayala that she had failed to meet her monthly quotas in February, July, August, September, and October of 2012. SUF ¶¶ 72–74; OSF ¶¶ 72–74. The suspension letter noted that Ayala had already been reprimanded for violations of Rule 20 and Rule 25, and the second offenses for each were punishable "[f]rom a 30 Day suspension to Termination." Dkt. 13-2 at 1–2. Pérez stated that Ayala was suspended for violating Rule 20 and Rule 25 of the Rules. PSF ¶ 42; RSF ¶ 42. According to the letter, Ayala had to serve a three-day suspension beginning on February 19 and ending on February 23 even though "it would be appropriate to apply a 30 day suspension" in order to give Ayala "an opportunity to modify her conduct." *Id.*; *see also* SUF ¶¶ 70, 71, 75; OSF ¶¶ 70, 71, 75. Ayala wrote on the suspension letter that she did not agree with it. PSF ¶ 7; RSF ¶ 7. The parties do not agree on why Ayala disagreed with the suspension letter. PSF ¶ 8; RSF ¶ 8.

At her deposition, Ayala stated that her store at Plaza Caparra was near a mall which contained PRTC sales kiosks and a PRTC customer service center that opened in 2012.

OSF 22; RSF ¶ 22. There was another customer service center three doors down from the Plaza Caparra store, a second store and service center across the street, and prepaid phones for sale in several different locations within a kilometer radius. OSF ¶ 23; RSF ¶ 23. Ayala blames the presence of other stores and points of sale, Plaza Caparra's limited parking spaces, and the Plaza Caparra's small store-size for affecting her sales at Plaza Caparra; PRTC disputes this conclusion. OSF ¶¶ 22–27; RSF ¶¶ 22–27. Her co-worker, Ramón de Jesús, reiterated these points as explaining noncompliance with the monthly sales objectives. Dkt. 13-8 at 12.

The PRTC Disciplinary Manual defines violations of Rule 20, Rule 25 and Rule 26. SUF ¶ 111; OSF ¶ 111. Rule 20 prohibits "Idleness or waste of time during work hours, falling asleep, reading material unrelated to work, personal calls or [sitting back]. Negligence or lack of interest in the performance of duties." SUF ¶ 108; OSF ¶ 108. HIETEL claims that Ayala did not waste time, fall asleep, or read material unrelated to her work during work hours in September and October 2012. PSF ¶¶ 10–12. PRTC disagrees and draws attention to the second sentence, arguing that reaching only twenty-five and thirty-five percent of sales quotas constitute "[n]egligence or lack of interest in the performance of duties." RSF ¶¶ 10–12.

Violating "practices and/or policies, administrative procedures, departmental procedures, instruction bulletins, General Standards of Conduct, Ethics Manual, Code of Business Conduct and/or any code or rules established by the Company" is a Rule 25 violation. SUF ¶ 109; OSF ¶ 109. A Rule 26 violation constitutes "[f]ailure to comply with the objectives or levels of productivity and quality established by the Company." SUF ¶ 110; OSF ¶ 110. In the case of unionized employees, "the application of this fault shall be in accordance with the provisions of the [Articles of Cooperation and Productivity of the] Collective Bargaining Agreements." *Id.* Although the parties dispute the specific language of the Monitoring Rules in their Rule 56 submissions, they agree that discipline is applied pursuant to Rule 26 if an employee who has received a written reprimand in the past eight

Hermandad Independiente de Empleados Telefónicos v. Puerto Rico Tel. Co., Civil No. 18-1220 (BJM)                                        8

months again fails to maintain eighty percent of their monthly sales quota for two additional months. *See* PSF ¶ 16; RSF ¶ 16; Ex. VIII at 14.

The first Rules offense results in anything from a written reprimand to a fifteen-day suspension. SUF ¶ 111; OSF ¶ 111. The second offense is merits action between a thirty-day suspension and a termination. *Id.* The third offense merits termination. *Id.* Employees may object to the disciplinary process and submit their grievances to the PRTC. Ayala did so. The grievance process in this case culminated in a final and binding arbitration, which was held on July 31, 2017 and August 23, 2017. SUF ¶¶ 4–5; OSF ¶¶ 4–5. Both parties submitted "the witnesses and documentary evidence that they deemed necessary." SUF ¶ 6; OSF ¶ 6. On February 16, 2018, the arbitrator issued an award concluding that Ayala's suspension was justified. SUF ¶ 7; OSF ¶ 7.

The Award reviewed the salient facts of the case, including the dates on which Ayala received the Rules, PRTC's disciplinary regulation, and a CD-ROM with Practices, Procedures, and Policies. Dkt. 13-8 at 7. The award excerpted sections of the CBA outlining management's prerogatives as well as an arbitration treatise substantively analyzing what it means for management to have an exclusive right to manage business. Dkt. 13-8 at 9—10.  The Arbitrator found that PRTC was within its rights to establish Rules that allowed it to maximize revenue and employee productivity. Dkt. 13-8 at 10–11. The Arbitrator concluded, based on the CBA and Pérez's deposition testimony, that the rules were reasonable and HIETEL was unable to prove otherwise. Dkt. 13-8 at 11.

The Arbitrator then determined that "[t]here is no doubt that the PRTC followed the steps established in its Monitoring Rules." Dkt. 13-8 at 15. He noted the exhortation received for forty-seven percent of the February 2012 quota, which warned against Rule 20 violations. *Id.* He cited the written reprimand issued for July and August shortfalls, which included allegations of Rule 20 and Rule 25 violations. *Id.* at 16. Finally, he cited the suspension notice and the Rules, which provided for a disciplinary action to be applied under Rule 26. *Id.* As cited, Rule 26 is the "[f]ailure to comply with the objectives or levels

of productivity and quality established by the Company in the case of Union member employees, [and] the application of this fault shall be in accordance with what is established in the Articles of Cooperation and Productivity of the Collective Bargaining Agreement." *Id.* at 16–17.

The Arbitrator concluded that PRTC failed meet its burden to prove Rule 20 violations because it offered evidence only from Crespo, who was not Ayala's direct supervisor. Dkt. 13-8 at 18. The Arbitrator did find sufficient evidence to prove a Rule 25 violation because the monthly sales quotas were reasonable, established by the Rules, and the evidence showed that Ayala missed her sales targets for five months in 2012. *Id.* at 19. The Arbitrator determined that PRTC satisfied its burden to prove that Ayala did not comply with the Rules which imposed a three-day suspension for violating Rule 25 and Rule 26, so the suspension was justified. *Id.* at 19–20.

## DISCUSSION

A federal district court may vacate an arbitration award that was granted in that district on the application of any party to the arbitration in four circumstances. 9 U.S.C. § 10. An award may be vacated:

(1) where the award was procured by corruption, fraud, or undue means;

(2) where there was evident partiality or corruption in the arbitrators, or either of them;

(3) where the arbitrators were guilty of misconduct in refusing to postpone the hearing, upon sufficient cause shown, or in refusing to hear evidence pertinent and material to the controversy; or of any other misbehavior by which the rights of any party have been prejudiced; or

(4) where the arbitrators exceeded their powers, or so imperfectly executed them that a mutual, final, and definite award upon the subject matter submitted was not made.

9 U.S.C. § 10(a).

When challenged in court, "an arbitrator's interpretation of a collective bargaining agreement is entitled to substantial deference." *Trustees of Boston Univ. v. Boston Univ.*

Hermandad Independiente de Empleados Telefónicos v. Puerto Rico Tel. Co., Civil No. 18-1220 (BJM)          10

*Chapter, Am. Ass'n of Univ. Professors*, 746 F.2d 924, 926 (1st Cir. 1984) (citing *W.R. Grace v. Rubber Workers Local 759*, 461 U.S. 757 (1983)). Judicial "review of labor arbitral decisions is extremely narrow and 'extraordinarily deferential.'" *Kraft Foods, Inc. v. Office and Prof'l Employees Int'l Union, Local 1295*, 203 F.3d 98, 100 (1st Cir. 2000) (citing *Dorado Beach Hotel Corp. v. Union de Trabajadores de la Industria Gastronómica Local 610*, 959 F.2d 2, 3-4 (1st Cir. 1992)). In fact, the standard of review for arbitration awards is "among the narrowest known in the law." *Ramos-Santiago v. U.P.S.*, 524 F.3d 120, 123 (1st Cir. 2008). "Because the parties have contracted to have disputes settled by an arbitrator chosen by them rather than by a judge, it is the arbitrator's view of the facts and of the meaning of the contract that they have agreed to accept." *United Paperworkers Int'l Union v. Misco, Inc.*, 484 U.S. 29, 37-38 (1987). The arbitrator cannot ignore the collective bargaining agreement ("CBA") and simply dispense "his own brand of industrial justice." *United Steelworkers of Am. v. Enterprise Wheel & Car Corp.*, 363 U.S. 593, 597 (1960). Rather, the arbitrator's decision must "draw its essence" from the CBA. *Id*.

Provided that the arbitrator "is even arguably construing or applying the contract and acting within the scope of his authority," a court may not disturb his judgment even if it is "convinced he committed serious error." *Misco*, 484 U.S. at 38; *see also Kraft Foods*, 203 F.3d at 100. Furthermore, "the Courts are not authorized to reconsider the merits of an award even though the parties may allege that the award rests on errors of fact or on misinterpretation of the contract." *Misco*, 484 U.S. at 35. In extremely limited situations, a court may vacate an arbitration award if the challenging party establishes that the award was: "(1) unfounded in reason and fact; (2) based on reasoning so palpably faulty that no judge, or group of judges, ever could conceivably have made such a ruling; or (3) mistakenly based on a crucial assumption that is concededly a non-fact." *Asociación De Empleados Del Estado Libre Asociado De Puerto Rico v. Unión Internacional De Trabajadores*, Civil No. 07–1816, 2008 WL 2551300, *4 (D.P.R. June 23, 2008) (citing *Teamsters Local Union No. 42 v. Supervalu, Inc.*, 212 F.3d 59, 66 (1st Cir. 2000)). The First

Circuit refers to this non-statutory standard as "manifest disregard for the law," referring to circumstances in which the record shows that the arbitrator knew the law and willfully ignored it. *McCarthy v. Citigroup Global Mkts., Inc.*, 463 F.3d 87, 91–92 (1st Cir. 2006).

HIETEL puts forth four grounds on which it contends the award should be vacated: the reasonableness of the sales quotas, the treatment of Ayala's testimony, the conclusion that Ayala did not try to improve her performance, and failure to properly apply the Rules to Ayala's case. Dkt. 5 at 2.

HIETEL argues that the Arbitrator improperly placed the burden on Ayala to show the reasonableness of the Rules and the sales quotas. Dkt. 14 at 8. The record reflects that at least three witnesses discussed the sales objectives and their reasonableness. HIETEL denied PRTC's assertions of fact about Pérez's methodology based on Local Rule 56(e), but the Award makes clear that the Arbitrator found her testimony both reasonable and persuasive. *See* SUF ¶ 53; OSF ¶ 53; Dkt. 13-8 at 11–12. HIETEL re-interprets evidentiary conclusions in the Award to contend that the Arbitrator assigned the burden to prove the unreasonableness of the Rules to Ayala, but this is a stretch. The Arbitrator's analysis, that HIETEL "did not provide evidence that the Monitoring Rules did not have a basis on reasonableness," does not imply that HIETEL bore the burden but rather it failed in its goal "to undermine the credibility of the witness, and at the same time question the reasonableness of the Monitoring Rules." Dkt. 13-8 at 11. This interpretation accords with the Arbitrator's own point that De Jesús corroborated Ayala's testimony about the external sales pressures, but Ayala's other allegations about the lack of sales training were unsupported in the face of evidence that she had received PRTC policies and regulations. *Id.* at 12.

The Arbitrator's conclusion that the sales quotas were reasonable despite the external factors Ayala and De Jesús identified is firmly within his discretion. The Arbitrator, in discounting Ayala's claim that she lacked training, cites the Puerto Rico Supreme Court in stating "'mere allegations or theories do not constitute evidence.'" Dkt. 13-8 at 12

(quoting *Reece Corp. v. Ariela, Inc.*, 122 D.P.R. 270, 286 (P.R. 1988)). HIETEL enjoys the advantages of a non-moving party in a motion for summary judgment, but it would not be reasonable here to discount the Arbitrator's explicit, correct legal analysis and his own interpretation of the facts presented.

HIETEL next contends that the Arbitrator did not properly weigh Ayala's deposition testimony because he discounted some of her assertions as unsupported allegations. Dkt. 14 at 10–11. According to HIETEL, a credible witness's testimony about his or her personal knowledge should be admissible evidence and sufficient to prove a fact. Dkt. 14 at 11 (citing P.R. R. Evid. 110(d), 602). But an arbitrator has the discretion to judge the "admissibility and relevancy of evidence submitted in an arbitration proceeding." *Hoteles Condado Beach v. Union de Tronquistas Local 901*, 763 F.2d 34, 38-39 (1st Cir. 1985) (quoting F. Elkouri & E. Elkouri, How Arbitration Works 254–56 (3d ed. 1973)). And even admissible evidence is not necessarily sufficient to prove a fact. The Arbitrator determines "the truth respecting material matters in controversy, as he believes it to be, based upon a full and fair consideration of the entire evidence." *Id.* at 39. Here, the Arbitrator weighed the reasonableness of the Rules and Pérez's testimony against Ayala and De Jesús's testimony and found that, despite some of the geographic challenges faced by Plaza Caparra Sales Consultants, the Rules were reasonable. Vacating the decision of an arbitrator is appropriate "only when the exclusion of relevant evidence so affects the rights of a party that it may be said that he was deprived of a fair hearing." *Id*. at 40. HIETEL does not contend that Ayala's testimony was ignored or excluded, so there is no legal basis for discounting the Arbitrator's weighing of evidence.

The First Circuit has held that "an arbitrator's fact-finding may be improvident, erroneous or 'silly'" and that he is "even entitled to refuse to consider evidence if his reasoning is 'arguable' and his decision is not procured by fraud or dishonesty." *Berklee Coll. of Music v. Berklee Chapter of the Mass. Fed'n of Teachers, Local 4412*, 858 F.2d 31, 37 (1st Cir. 1988). The Arbitrator found that Ayala's claim of poor training, for example,

was not enough to exempt her from the application of the Rules. The Arbitrator stated that "[r]egarding the training, the PRTC understands that they were sufficient, and it also states that if an employee feels any deficiencies, he should inform his supervisor so that he can help him." Dkt. 13-8 at 8. It is undisputed that Ayala did not complain to the Bureau of Conciliation and Arbitration about her exhortation or written reprimand, which is the prescribed step for employees who wish to challenge disciplinary measures. SUF ¶ 69; OSF ¶ 69. HIETEL takes issue with the Arbitrator's conclusion, but it is a discretionary determination of fact.

HIETEL argues that PRTC had the burden to prove both that Ayala did not attempt to improve her performance and that she did not receive sufficient training for her job. Dkt. 14 at 13. HIETEL contends that PRTC did not meet that burden. *Id.* As stated, arbitrators exercise discretion to resolve factual discrepancies and to determine material matters based on the entirety of the evidence. *See Hoteles*, 763 F.2d at 39. The Arbitrator found "no approach by the Complainant to the Company regarding the lack of sales training. The Complainant acknowledged receipt of the different policies and regulations of the PRTC." Dkt. 13-8 at 12. The parties agreed that Ayala was asked to learn sales skills on the job, and the Arbitrator noted that Ayala felt that she was not well-trained. PSF ¶¶ 3–4; RSF ¶¶ 3–4; Dkt. 13-8 at 12. Be that as it may, the Arbitrator still concluded that the Rules were reasonable and that they applied to all employees. Dkt. 13-8 at 11, 13. He did not distinguish between well- or poorly-trained employees and neither do the Rules. HIETEL implies that training and Ayala's effort affect the application of the Rules, but HIETEL does not offer sections from the CBA or the Rules in support of that contention. Dkt. 14 at 12–15. Review of arbitration cases requires great deference to the findings of the arbitrator. Moreover, "[t]o defeat a properly supported motion for summary judgment, the nonmoving party must establish a trial-worthy issue by presenting 'enough competent evidence to enable a finding favorable to the nonmoving party.'" *LeBlanc*, 6 F.3d at 842. Because HIETEL cannot point to a clause in the CBA or evidence that the Arbitrator did not provide

Hermandad Independiente de Empleados Telefónicos v. Puerto Rico Tel. Co., Civil No. 18-1220 (BJM)   14

a fair hearing on this issue, there cannot be a finding favorable to HIETEL on the question of training.

HIETEL also objects to the ultimate finding that Ayala violated Rule 25 and Rule 26 when PRTC suspended Ayala pursuant to alleged violations of Rule 20 and Rule 25. Dkt. 14 at 15. The Arbitrator indeed found that Rule 25 and Rule 26 were appropriate after the close of evidence because PRTC failed to prove a violation of Rule 20 through specific facts. Dkt. 13-8 at 18–19. HIETEL agrees that "failure to comply with the quota applies Fault # 26 of the Rules" but objects to the conclusion that Ayala violated Rule 25. Dkt. 14 at 16. It is not clear to the court what the objection to the Rule 25 violation is because HIETEL focuses on the lack of notice to Ayala that she violated Rule 26 and the timing of her written reprimand. Dkt. 14 at 17. It is undisputed that the exhortation and the written reprimand warn Ayala of Rule 20 and Rule 25 violations, Rule 20 being negligence in duties and Rule 25 being violation of PRTC rules. The text of those letters also notes, however, the discipline for violating each of those rules and that suspension is a potential consequence for violating either one. *See* Dkt. 13-9; Dkt. 13-10.

HIETEL also contends that PRTC improperly suspended Ayala under Rule 20 and Rule 25 when "disciplinary action should be taken under [Rule] 26." Dkt. 14 at 17. Rule 26 covers failure to meet productivity objectives. SUF ¶ 110; OSF ¶ 110. Both parties agree that discipline is applied pursuant to Rule 26 if an employee who has received a written reprimand in the past eight months again fails to maintain eighty percent of their monthly sales quota for two additional months. *See* PSF ¶ 16; RSF ¶ 16. The Arbitrator, who was not satisfied with PRTC's evidence supporting a violation of Rule 20, still found a violation of Rule 25, which covers violation of company policies and rules. Dkt. 13-8 at 19. That he noted the more specific violation of Rule 26 in the Award does not negate that discipline was appropriate pursuant to Rule 25, especially where the two Rules are substantively similar. HIETEL even refers to Rule 26 as "a general residual clause that operates only when the other provisions are inapplicable," making the Award's invocation of Rule 26

superfluous. Dkt. 14 at 16. PRTC argues that nothing in the CBA prohibits the Arbitrator from finding additional violations. Dkt. 18 at 10. HIETEL alludes to specific CBA provisions requiring notification of the charges but does not cite to any such provision that might preclude the Arbitrator from finding an additional violation in the process of affirming the suspension. *See* Dkt. 14 at 17.

Provided that the arbitrator "is even arguably construing or applying the contract and acting within the scope of his authority," a court may not disturb his judgment even if it is "convinced he committed serious error." *Misco*, 484 U.S. at 38. Including an additional violation in the Award is not precluded by the CBA nor is it a serious error where the charged violation, Rule 25, would have resulted in the same punishment. The Award still draws its essence from the CBA, which requires that "[a]ny disciplinary measure must be for just cause." Dkt. 13-1 at 110. The Rule 25 violation constitutes just cause pursuant to the Rules. Accordingly, arguments over the propriety of including a Rule 26 violation in the Award do not create a material dispute of fact that could challenge the ultimate finding of just cause.

HIETEL finally argues that PRTC violated its own Rules. Dkt. 14 at 17. This is a simple mix-up of agreed-upon facts. HIETEL mistakes the written reprimand for July and August sales shortfalls which was received on October 15, 2012 as a reprimand for shortfalls in September and October, which had not even ended. *Id.*; *see also* SUF 67–69; OSF ¶¶ 67–69. She did not receive a written reprimand for the September and October shortfalls, instead receiving a suspension letter the following February. SUF ¶¶ 70, 74; OSF ¶¶ 70, 74; PSF ¶ 6; RSF ¶ 6. The Award explicitly states that "[t]here is no doubt that the PRTC followed the steps established in its Monitoring Rules." Dkt. 13-8 at 15. In light of the Arbitrator's finding and the undisputed timeline for the disciplinary process, there is no material dispute over this aspect of the discipline.

## CONCLUSION

For the foregoing reasons, summary judgment is **GRANTED**.

**IT IS SO ORDERED.**

In San Juan, Puerto Rico, this 21st day of May 2019.

*S/ Bruce J. McGiverin*
BRUCE J. MCGIVERIN
United States Magistrate Judge